**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **REDWOOD TECHNOLOGIES, LLC,** §<br>§<br>**Plaintiff,** §<br>§<br>**v.** §<br>§<br>**TP-LINK TECHNOLOGIES CO., LTD.,** §<br>§<br>**Defendant.** §<br>§<br>§ | **JURY TRIAL DEMANDED**<br><br>**C.A. NO. 2:22-cv-372** |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Redwood Technologies, LLC ("Redwood") files this Complaint against Defendant TP-Link Technologies Co., Ltd. ("TP-Link" or "Defendant") for infringement of U.S. Patent No. 7,688,901 (the "'901 patent"), U.S. Patent No. 8,155,224 (the "'224 patent"), U.S. Patent No. 8,284,866 (the "'866 patent"), U.S. Patent No. 8,654,754 (the "'754 patent"), and U.S. Patent No. 9,374,209 (the "'209 patent"), collectively, the "Asserted Patents."

**THE PARTIES**

1.      Redwood Technologies, LLC is a Texas limited liability company, with a principal place of business at 812 West McDermott Dr. #1038, Allen, TX 75013.

2.      On information and belief, TP-Link is a corporation organized under the laws of China, with a place of business located at South Building 5 Keyuan Road, Central Zone Science & Technology Park, Nanshan, Shenzhen, People's Republic of China, Postcode: 518057. TP-Link is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, Wi-Fi compliant products accused of infringement. On information and belief, TP-Link, along with other foreign

and U.S.-based subsidiaries (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of TP-Link), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length to provide a distribution channel of infringing products within this District and the U.S. nationally.

3.      Prior to the filing of the Complaint, Redwood sent a letter received by TP-Link on November 5, 2021, where Redwood attempted to engage TP-Link and/or its agents in licensing discussions related to the Asserted Patents for reasonable and non-discriminatory terms for a license to be taken in the absence of litigation. TP-Link ignored Redwood's request to engage in licensing discussions. Indeed, TP-Link has known about each of the Asserted Patents since at least November 5, 2021, when TP-Link received notice of its infringement of the Asserted Patents via the letter sent by Redwood.

4.      Prior to the filing of the Complaint, Redwood sent a reminder letter received by TP-Link on January 6, 2021, where Redwood again attempted to engage TP-Link and/or its agents in licensing discussions related to the Asserted Patents for reasonable and non-discriminatory terms for a license to be taken in the absence of litigation. TP-Link ignored Redwood's request to engage in licensing discussions. Indeed, TP-Link has known about each of the Asserted Patents since at least January 6, 2021, when TP-Link received the reminder letter of its infringement of the Asserted Patents via the letter sent by Redwood.

5.      Prior to the filing of the Complaint, Redwood sent another letter received by TP-Link on May 24, 2022, where Redwood again attempted to engage TP-Link and/or its agents in licensing discussions related to the Asserted Patents for reasonable and non-discriminatory terms for a license to be taken in the absence of litigation. TP-Link again ignored Redwood's request to

engage in licensing discussions. Indeed, TP-Link has known about each of the Asserted Patents since at least May 24, 2022, when TP-Link received the second notice of its infringement of the Asserted Patents via the letter sent by Redwood.

6.      TP-Link's past and continuing making, using, selling, offering for sale, and/or importing, and/or inducing its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing the accused Wi-Fi compliant devices throughout the United States i) willfully infringe each of the Asserted Patents and ii) impermissibly take the significant benefits of Redwood's patented technologies without fair compensation to Redwood.

7.      On information and belief, TP-Link operates in agency with others, including its foreign and U.S.-based subsidiaries. *See, e.g.*, https://www.tp-link.com/en/about-us/corporate-profile/ ("Founded in 1996, TP-Link is a global provider of reliable networking devices and accessories, involved in all aspects of everyday life. The company is ranked by analyst firm IDC as the No. 1 provider of Wi-Fi devices for a consecutive 11 years*, supplying distribution to more than 170 countries and serving billions of people worldwide. With a proven heritage of stability, performance, and value, TP-Link has curated a portfolio of products that meet the networking needs of all individuals. Now, as the connected lifestyle continues to evolve, the company is expanding today to exceed the demands of tomorrow. To know more about us, you could get regional contact information from the "Contact Us" part"). TP-Link is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, Wi-Fi compliant products accused of infringement. TP-Link operates in agency with others, including its foreign and U.S.-based subsidiaries, to provide a distribution channel of infringing products within this District and the U.S. nationally.

TP-Link, itself and between and amongst its agents and foreign and U.S.-based subsidiaries, purposefully direct the Accused Products into established distribution channels within this District and the U.S. nationally.

8.      On information and belief, TP-Link maintains a corporate presence in the United States via at least its, U.S.-based sales subsidiaries including, TP-Link USA Corporation ("TPLUSA"). TPLUSA is a corporation organized under the laws of the State of California, with a principal place of business at 10 Mauchly, Irvine, California 92618. TPLUSA is an indirect wholly-owned subsidiary of TP-Link. TPLUSA provides sales, distribution, research, and development support in the United States for its parent TP-Link, which wholly owns TPLUSA. TPLUSA is an agent of TP-Link. At the direction and control of TP-Link, U.S.-based sales subsidiaries including, TPLUSA, import infringing Wi-Fi compliant products into the United States and this District.

9.      On information and belief, TP-Link and its U.S.-based sales subsidiaries (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of TP-Link) have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. For example, TP-Link, alone and via at least the activities of its U.S.-based sales subsidiaries (e.g., TPLUSA), conducts business in the United States, including importing, distributing, and selling Wi-Fi compliant devices that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this judicial district. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be

applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

10.     Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of TP-Link's Wi-Fi compliant devices with distributors and customers operating in and maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries (e.g., TPLUSA), TP-Link does business in the U.S., the state of Texas, and in the Eastern District of Texas.

<u>**JURISDICTION AND VENUE**</u>

11.     This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c). The Defendant is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

14.     This Court has general and specific personal jurisdiction over Defendant pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) Defendant has done and continues to do business in Texas and (ii) Defendant has, directly and through intermediaries, committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein. Defendant has placed, and is continuing to place, infringing

products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendant has derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendant has substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

15.    This Court has personal jurisdiction over Defendant, directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers including its U.S.-based sales subsidiaries, e.g., TPLUSA. Through direction and control of such subsidiaries, Defendant has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. TPLUSA is an indirect wholly-owned subsidiary of TP-Link. The primary business of TPLUSA is the marketing and sale of electronic products in the United States. TP-LINK has a 100% controlling ownership interest in TPLUSA (directly or indirectly) and maintains more than half of the voting rights for such subsidiaries as its basis for control. Upon information and belief, TP-Link compensates TPLUSA for its sales support services in the United States. As such, TP-Link has a direct financial interest in its U.S.-based subsidiaries, and vice versa.

16.    Personal jurisdiction is proper because Defendant has committed acts of infringement in this District. This Court has personal jurisdiction over Defendant because, *inter alia*, this action arises from activities Defendant purposefully directed towards the State of Texas and this District.

17.    Exercising personal jurisdiction over Defendant in this District would not be unreasonable given Defendant's contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to Redwood.

18.    In addition, Defendant has knowingly induced and continues to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

19.    Personal jurisdiction also exists specifically over Defendant because Defendant, directly or through affiliates, subsidiaries, agents, or intermediaries, transacts business in this State or purposefully directed at this State by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

20.    Personal jurisdiction also exists specifically because Defendant has overlapping executives, interlocking corporate structures, and close relationships as manufacturer, importer, and distributor of the products accused of infringement.

21.    To the extent the foreign Defendant is not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over Defendant in this State and this District would

be consistent with due process and this State's long-arm statute and under national contacts in light of the facts alleged in this Complaint.

22.    In addition, Defendant, directly or through affiliates, subsidiaries, agents, or intermediaries, places infringing products into the stream of commerce knowing they will be sold and used in Texas, and economically benefits from the retail sale of infringing products in this State. For example, Defendant's products have been sold and are available for sale in this District through at Best Buy, Walmart, and Target retail stores, and are also available for sale and offered for sale through online retailers such as Best Buy, Walmart, Target, and Amazon. TP-Link also advertises its infringing products to consumers in Texas and this District through its agent's websites. *See, e.g.*, https://www.tp-link.com/us/; https://www.tp-link.com/en/about-us/corporate-profile/ ("To know more about us, you could get regional contact information from the "Contact Us" part").

23.    With respect to the '901 patent, the '224 patent, the '866 patent, and the '209 patent, the Accused Products are devices that include, but are not limited, to Defendant's devices that support IEEE 802.11n and/or IEEE 802.11ac and/or IEEE 802.11ax (e.g., TP-Link Archer AX55 AX3000 Dual Band Gigabit Wi-Fi 6 Router, Deco X90L: AX6600 Whole Home Mesh Wi-Fi System, Deco X20: AX1800 Whole Home Mesh Wi-Fi 6 System, Deco M5: AC1300 Whole-Home Wi-Fi System, Deco S4: AC 1200 Whole Home Mesh Wi-Fi System, Deco X60: AX3000 Whole Home Mesh Wi-Fi 6 System, and Talon AD7200 Multi-Band Wi-Fi Router) and other devices, as well as, their components, and processes related to the same. With respect to the '754 patent, the Accused Products are devices that include, but are not limited, to Defendant's devices that support IEEE 802.11ad (e.g., Talon AD7200 Multi-Band Wi-Fi Router), as well as, their components, and processes related to the same.

24.     On information and belief, TP-Link controls or otherwise directs and authorizes all activities of its U.S.-based sales subsidiaries, including TPLUSA. Such directed and authorized activities include, the U.S.-based subsidiaries' using, offering for sale, selling, and/or importing the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the Asserted Patents. The Defendant's U.S.-based sales subsidiaries (e.g., TPLUSA) are authorized to import, distribute, sell, or offer for sale the Accused Products on behalf of Defendant. For example, TP-Link researches, designs, develops, and manufactures the Accused Products, and then directs its U.S.-based sales subsidiaries to import, distribute, offer for sale, and sell the Accused Products in the United States. *See, e.g., United States v. Hui Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Furthermore, Defendant's U.S.-based sales subsidiaries also administer, on behalf of Defendant, requests for service under and any disputes arising from Defendant's limited warranty of the Accused Products sold in the U.S., including in Texas and this judicial district. *See, e.g.*, https://www.tp-link.com/us/support/replacement-warranty/. Thus, Defendant's U.S.-based sales subsidiaries conduct infringing activities on behalf of Defendant.

25.     On information and belief, Defendant's U.S.-based sales subsidiaries' corporate presence in the United States gives TP-Link substantially the same business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state. Defendant's U.S.-based sales subsidiaries are authorized to import, distribute, sell, and offer for sale Defendant's products, including Defendant's Accused Products, as well as their components and processes related to the same, on behalf of Defendant. For example, Defendant's U.S.-based

sales subsidiaries operate within Defendant's global network of sales subsidiaries. In the U.S., including within the Eastern District of Texas, Defendant's Accused Products, as well as their components and processes related to the same, are imported, distributed, offered for sale, and/or sold.

26.    Via Defendant's alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers maintaining a business presence, operating in, and/or residing in the U.S., Defendant's products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in retail stores, brick and mortar and/or online, in Texas including within this judicial district. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)). For example, Defendant's Accused Products are sold to end users by the U.S.-based subsidiaries, distributors, and customers, including, but not limited to, TPLUSA, online and at retail stores located throughout the Eastern District of Texas.

27.    On information and belief, TP-Link has placed and continues to place infringing products and/or products that practice infringing processes into the stream of commerce via established distribution channels comprising at least subsidiaries and distributors, such as TPLUSA, and customers such as Best Buy, Target, Walmart and Amazon, with the knowledge and/or intent that those products are and/or will be imported, used, offered for sale, sold, and continue to be sold in the United States and Texas, including in this judicial district. As a result,

TP-Link has, vicariously through and/or in concert with its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this judicial district.

28.    In the alternative, the Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Defendant is consistent with the U.S. Constitution.

29.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

## COUNT I
### (INFRINGEMENT OF U.S. PATENT NO. 7,688,901)

30.    Plaintiff incorporates paragraphs 1 through 29 herein by reference.

31.    Redwood is the assignee of the '901 patent, entitled "Transmission Method, Transmission Apparatus, and Reception Apparatus," with ownership of all substantial rights in the '901 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

32.    TP-Link has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '901 patent in this judicial district and elsewhere in Texas and the United States.

33.    TP-Link and/or its agents directly infringe the '901 patent via 35 U.S.C. § 271(a) by using and/or testing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '901 patent. For example, TP-Link and/or its agents directly infringe the '901 patent by using and/or testing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '901 patent. Furthermore, TP-Link directly infringes the '901 patent through its direct involvement in the activities of its subsidiaries, including TPLUSA. Such subsidiaries conduct activities that constitute direct infringement of the '901 patent under 35 U.S.C. § 271(a) by using and/or testing those Accused Products. Further, TP-Link is vicariously liable for this infringing conduct of its U.S.-based subsidiaries, e.g., TPLUSA, (under both the alter ego and agency theories) because, as an example and on information and belief, TP-Link and TPLUSA are essentially the same company, and TP-Link has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries, e.g., TPLUSA.

34.    For example, TP-Link infringes claim 1 of the '901 patent via the Accused Products. The Accused Products perform a method of transmitting modulation signals. *See, e.g.,* Sections 19.1.1 and 19.1.2 of Part 11: Wireless LAN Medium Access Control (MAC) and Physical (PHY) Specifications of IEEE Std 802.11™ -2016 ("IEEE 802.11 2016").

35.    The Accused Products each generate a plurality of modulation signals each of which is to be transmitted from a different one of a plurality of antennas, where each modulation signal is to include one or more preamble symbol groups each consisting of a plurality of preamble symbols used for demodulation. For example, the Accused Products generate modulation signals (e.g., HT-mixed format PPDUs) which are transmitted from a plurality of antennas. *See, e.g.,*

12

Sections 19.3.3 of IEEE 802.11 2016. Each OFDM symbol within a modulation signal comprises a pilot symbol sequence consisting of four pilot symbols used for demodulation. *See, e.g.*, Sections 17.3.5.9 and 19.3.11.10 of IEEE 802.11 2016.

36.     The Accused Products each insert the one or more preamble symbol groups at the same one or more temporal points in each modulation signal, wherein the one or more preamble symbol groups at the one or more temporal points are orthogonal to other preamble symbol groups at the same one or more temporal points with zero mutual correlation among the plurality of modulation signals, each preamble symbol having a non-zero amplitude, and each preamble symbol group consisting of preamble symbols the quantity of which is greater than that of the plurality of modulation signals to be transmitted. For example, each of the Accused Products insert one or more OFDM symbols comprising a pilot symbol sequence in each modulation signal, where each modulation signal sent from different antennas are transmitted simultaneously in time. *See, e.g.*, Section 19.3.11.10 of IEEE 802.11 2016. The pilot symbol sequences corresponding to different spatial streams are orthogonal at the same one or more temporal points with zero mutual correlation among the plurality of spatial streams. *See, e.g.*, Table 19-19 of IEEE 802.11 2016. The pilot symbols are BPSK modulated and have a non-zero amplitude. *See, e.g.*, Section 17.3.5.9 of IEEE 802.11 2016. Each pilot symbol sequence contains four pilot symbols, which is greater than the modulation signals to be transmitted by two or three antennas utilized by the Accused Products. *See, e.g.*, Sections 19.1.1 and 19.3.11.10 of IEEE 802.11 2016.

37.     The Accused Products each transmit the plurality of modulation signals, each comprising transmission data, which is different between the plurality of modulation signals, and the one or more preamble symbol groups, from the plurality of antennas, respectively, in an identical frequency band. For example, each of the Accused Products transmit the plurality of

modulation signals comprising transmission data and the pilot symbol sequence from the two or three antennas in the same channel having a particular width (e.g., 20 MHz). *See, e.g.*, Section 19.3.15.1, Tables 19-28, 19-29, and 19-30, and Figure 17-13 of IEEE 802.11 2016. Each stream of data to be transmitted is divided into multiple spatial streams to form respective modulation signals having different transmission data during the encoding process. *See, e.g.*, Section 19.3.4 of IEEE 802.11 2016.

38.    The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

39.    At a minimum, TP-Link has known of the '901 patent at least as early as the filing date of the complaint. In addition, TP-Link has known about the '901 patent since at least November 5, 2021, when TP-Link and/or its agents received notice of its infringement via a letter. Redwood sent another letter, which referenced the prior notice letter, that was received by TP-Link and/or its agents on January 6, 2022. Furthermore, TP-Link has known about the '901 patent since at least May 24, 2022, when TP-Link and/or its agents received notice of its infringement via another letter.

40.    On information and belief, since at least the above-mentioned date when TP-Link was on notice of its infringement, TP-Link has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that use and/or test the Accused Products comprising all of the limitations of one or more claims of the '901 patent to directly infringe one or more claims of the '901 patent by using and/or testing the Accused Products. Since at least the notice provided on the above-mentioned date, TP-Link does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '901 patent. TP-Link intends to cause, and has taken affirmative steps to induce infringement by its distributors,

importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the  Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

41.    On information and belief, despite having knowledge of the '901 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '901 patent, TP-Link has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. TP-Link's infringing activities relative to the '901 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

42.    Redwood has been damaged as a result of TP-Link's infringing conduct described in this Count. TP-Link is, thus, liable to Redwood in an amount that adequately compensates Redwood for TP-Link's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 8,155,224)

43.    Plaintiff incorporates paragraphs 1 through 42 herein by reference.

44.    Redwood is the assignee of the '224 patent, entitled "Transmission Method, Transmission Apparatus, and Reception Apparatus," with ownership of all substantial rights in the '224 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

45.    The '224 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '224 patent issued from U.S. Patent Application No. 12/698,917.

46.    TP-Link has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '224 patent in this judicial district and elsewhere in Texas and the United States.

47.    TP-Link and/or its agents directly infringe the '224 patent via 35 U.S.C. § 271(a) by using and/or testing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '224 patent. For example, TP-Link and/or its agents directly infringe the '224 patent by using and/or testing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '224 patent. Furthermore, TP-Link directly infringes the '224 patent through its direct involvement in the activities of its subsidiaries, including TPLUSA. Such subsidiaries conduct activities that constitute direct infringement of the '224 patent under 35 U.S.C. § 271(a) by using and/or testing those Accused Products. Further, TP-Link is vicariously liable for this infringing conduct of its U.S.-based subsidiaries, e.g., TPLUSA, (under both the alter ego and agency theories) because, as an example and on information and belief, TP-Link and TPLUSA are essentially the same company, and TP-Link has the right and

ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries, e.g., TPLUSA.

48.     For example, TP-Link infringes claim 1 of the '224 patent via the Accused Products. The Accused Products perform a method of transmitting modulation signals. *See, e.g.*, Sections 19.1.1 and 19.1.2 of IEEE 802.11 2016.

49.     The Accused Products each generate a plurality of modulation signals, where each modulation signal to be transmitted from a different one of a plurality of antennas, where each modulation signal includes a pilot symbol sequence consisting of a plurality of pilot symbols used for demodulation. For example, each of the Accused Products generates modulation signals (e.g., HT-mixed format PPDUs) which are to be sent to a plurality of antennas. *See, e.g.*, Section 19.3.3 of IEEE 802.11 2016. Each OFDM symbol includes a pilot symbol sequence consisting of four pilot symbols used for demodulation. *See, e.g.*, Sections 17.3.5.9 and 19.3.11.10 of IEEE 802.11 2016.

50.     Each of the Accused Products insert each of the pilot symbol sequences at the same temporal point in each modulation signal, wherein the pilot symbol sequences are orthogonal to each other with zero mutual correlation among the plurality of modulation signals, where each pilot symbol has a non-zero amplitude, where the quantity of the plurality of pilot symbols in each sequence being greater than the quantity of the plurality of modulation signals to be transmitted. For example, the Accused Products insert each of the four pilot symbol sequences at the same temporal point in each modulation signal. *See, e.g.*, Section 19.3.11.10 of IEEE 802.11 2016. The pilot symbol sequences corresponding to different spatial streams are orthogonal and have zero mutual correlation. *See, e.g.*, Table 19-19 of IEEE 802.11 2016. The pilot symbols are BPSK modulated and have a non-zero amplitude. *See, e.g.*, Section 17.3.5.9 of IEEE 802.11 2016. Each

pilot symbol sequence contains four pilot symbols, which is greater than the modulation signals to be transmitted by two or three antennas utilized by the Accused Products. *See, e.g.*, Sections 19.1.1 and 19.3.11.10 of IEEE 802.11 2016.

51.     Each of the Accused Products transmit in an identical frequency band the plurality of modulation signals from the plurality of antennas, where each modulation signal comprises different transmission data and one of the pilot symbol sequences. For example, each of the Accused Products transmit the plurality of modulation signals in the same channel having a particular width (e.g., 20 MHz) from two or three antennas. *See, e.g.*, Sections 19.3.15.1, Tables 19-28, 19-29, and 19-30, and Figure 17-13 of IEEE 802.11 2016. Each stream of data is divided into multiple spatial streams by the Accused Products to form respective modulation signals comprising different transmission data during encoding. *See, e.g.*, Section 19.3.4 of IEEE 802.11 2016. Further, each of the modulation signals comprises one of the pilot symbol sequences. *See, e.g.*, Section 19.3.11.10 of IEEE 802.11 2016.

52.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

53.     At a minimum, TP-Link has known of the '224 patent at least as early as the filing date of the complaint. In addition, TP-Link has known about the '224 patent since at least November 5, 2021, when TP-Link and/or its agents received notice of its infringement via a letter. Redwood sent another letter, which referenced the prior notice letter, that was received by TP-Link and/or its agents on January 6, 2022. Furthermore, TP-Link has known about the '224 patent since at least May 24, 2022, when TP-Link and/or its agents received notice of its infringement via another letter.

54.    On information and belief, since at least the above-mentioned date when TP-Link was on notice of its infringement, TP-Link has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that use and/or test the Accused Products comprising all of the limitations of one or more claims of the '224 patent to directly infringe one or more claims of the '224 patent by using and/or testing the Accused Products. Since at least the notice provided on the above-mentioned date, TP-Link does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '224 patent. TP-Link intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the  Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

55.    On information and belief, despite having knowledge of the '224 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '224 patent, TP-Link has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. TP-Link's infringing activities relative to the '224 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical

infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

56.    Redwood has been damaged as a result of TP-Link's infringing conduct described in this Count. TP-Link is, thus, liable to Redwood in an amount that adequately compensates Redwood for TP-Link's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III
### (INFRINGEMENT OF U.S. PATENT NO. 8,284,866)

57.    Plaintiff incorporates paragraphs 1 through 56 herein by reference.

58.    Redwood is the assignee of the '866 patent, entitled "OFDM Transmission Signal Generation Apparatus and Method, and OFDM Reception Data Generation Apparatus and Method," with ownership of all substantial rights in the '866 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

59.    The '866 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '866 patent issued from U.S. Patent Application No. 13/171,121.

60.    TP-Link has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '866 patent in this judicial district and elsewhere in Texas and the United States.

61.    TP-Link directly infringes the '866 patent via 35 U.S.C. § 271(a) by making, offering for sale, using, testing, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '866 patent. For example, TP-Link directly infringes the '866 patent by offering for sale, selling, and/or importing those Accused Products, their components and

processes, and/or products containing the same that incorporate the fundamental technologies covered by the '866 patent, to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, TP-Link sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '866 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, TP-Link directly infringes the '866 patent through its direct involvement in the activities of its subsidiaries, including TPLUSA, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '866 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. On information and belief, TP-Link offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, TP-Link is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., TPLUSA, (under both the alter ego and agency theories) because, as an example and on information and belief, TP-Link and TPLUSA are essentially the same company, and TP-Link has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., TPLUSA.

62.    For example, TP-Link infringes claim 1 of the '866 patent via the Accused Products. The Accused Products comprise an OFDM transmission signal generation apparatus. *See, e.g.*, Figure 19-3 of IEEE 802.11 2016.

63.    The Accused Products each comprise circuitry and/or components (hardware and/or software) configured to form a plurality of transmission signals, where each of the plurality of transmission signals comprises several pilot carriers, which are located in identical carrier positions among the plurality of transmission signals. For example, each of the Accused Products comprises a spatial mapper configured to form a plurality of OFDM signals. *See, e.g.*, Section 19.3.3 and Figure 19-3 of IEEE 802.11 2016. Further, each of the OFDM signals contains, for example, four pilot carriers, in a 20MHz transmission, inserted in carrier positions of -21, -7, 7, and 21, or six pilot carriers, in a 40MHz transmission, inserted in carrier positions of -53, -25, -11, 11, 25, and 53. *See, e.g.*, Section 19.3.11.10 and Equation 19-54 of IEEE 802.11 2016. Orthogonal pilot sequences are assigned to identical time slots of pilot carriers in identical carrier positions among the plurality of OFDM signals, and identical pilot sequences are assigned to at least two of the OFDM signals. *See, e.g.*, Section 19.3.11.10 and Table 19-19 of IEEE 802.11 2016.

64.    The Accused Products each comprise circuitry and/or components (hardware and/or software) of an Inverse Fourier transform section configured to convert the plurality of transmission signals to a plurality of OFDM signals to be transmitted over an identical frequency band at an identical time. *See, e.g.*, Section 19.3.3 and Figure 19-3 of IEEE 802.11 2016. For example, the Accused Products are configured to send simultaneous transmissions that are transmitted using the same channel (e.g., a channel having a width of 20 MHz). *See, e.g.*, Section 19.3.15.1 and Tables 19-28, 19-29, and 19-30 of IEEE 802.11 2016.

65.    The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

66.    At a minimum, TP-Link has known of the '866 patent at least as early as the filing date of the complaint. In addition, TP-Link has known about the '866 patent since at least November 5, 2021, when TP-Link and/or its agents received notice of its infringement via a letter and a list of relevant patents. Redwood sent another letter, which referenced the prior notice letter, that was received by TP-Link and/or its agents on January 6, 2022. Furthermore, TP-Link has known about the '866 patent since at least May 24, 2022, when TP-Link and/or its agents received notice of its infringement via another letter.

67.    On information and belief, since at least the above-mentioned date when TP-Link was on notice of its infringement, TP-Link has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, use, purchase, offer to sell, or sell the Accused Products comprising all of the limitations of one or more claims of the '866 patent to directly infringe one or more claims of the '866 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, TP-Link does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '866 patent. TP-Link intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features

related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

68.    On information and belief, despite having knowledge of the '866 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '866 patent, TP-Link has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. TP-Link's infringing activities relative to the '866 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

69.    Redwood has been damaged as a result of TP-Link's infringing conduct described in this Count. TP-Link is, thus, liable to Redwood in an amount that adequately compensates Redwood for TP-Link's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV
(INFRINGEMENT OF U.S. PATENT NO. 8,654,754)

70.    Plaintiff incorporates paragraphs 1 through 69 herein by reference

71.    Redwood is the assignee of the '754 patent, entitled "Communication System, a Communication Method, and a Communication Apparatus with Clear to Send Signal Frame," with ownership of all substantial rights in the '754 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

72.    The '754 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '754 patent issued from U.S. Patent Application No. 13/410,961.

73.     TP-Link has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '754 patent in this judicial district and elsewhere in Texas and the United States.

74.     TP-Link directly infringes the '754 patent via 35 U.S.C. § 271(a) by making, offering for sale, using, testing, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '754 patent. For example, TP-Link directly infringes the '754 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '754 patent, to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, TP-Link sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '754 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, TP-Link directly infringes the '754 patent through its direct involvement in the activities of its subsidiaries, including TPLUSA, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '754 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. On information and belief, TP-Link offers for sale, sells, and

imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, TP-Link is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., TPLUSA, (under both the alter ego and agency theories) because, as an example and on information and belief, TP-Link and TPLUSA are essentially the same company, and TP-Link has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., TPLUSA.

75.    For example, TP-Link infringes claim 43 of the '754 patent via the Accused Products. The Accused Products each comprise a first electronic device of claim 43.

76.    The Accused Products each comprise processing configured to control transmitting a request to send signal to a second electronic device, where the request to send signal indicates a request to initiate data transmission and the request to send signal frame includes an address of the second electronic device. IEEE 802.11-2016 specifies distributed coordination functions (DCFs) for directional multi-gigabit (DMG) wireless stations. *See, e.g.*, Section 10.3.1 of IEEE 802.11 2016. For example, a first wireless station transmits a request to send (RTS) frame to a second wireless station, such that the RTS frame indicates the impending use of the medium to transmit a Data frame to the second wireless station and the RTS frame includes a receiver address (RA), which is the address of the second wireless station. *See, e.g.*, Sections 9.3.1.2, 10.3.1, and Figure 9-20 of IEEE 802.11 2016.

77.    The Accused Products each comprise processing configured to control receiving a clear to send signal from the second electronic device, where the clear to send signal is transmitted in reply to the request to send signal. For example, the second wireless station responds to the RTS with a DMG clear to send (CTS) frame. *See, e.g.*, Sections 10.3.1 and 10.3.2.7 of IEEE 802.11

26

2016. The clear to send signal includes at least a first section, a second section, and a third section. For example, the DMG CTS frame includes a series of sections, such as Frame Control, Duration, receiver address (RA), transmitter address (TA), and frame check sequence (FCS). *See, e.g.*, Section 9.3.1.14 and Figure 9-43 of IEEE 802.11 2016. The first section includes a duration information for setting a counter value for controlling communication operation. For example, the DMG CTS frame includes duration information specifying the amount of time the RTS frame took to reach the second wireless stations after transmission. *See, e.g.*, Section 9.3.1.14 and Figure 9-43 of IEEE 802.11 2016. The first section includes a duration information for setting a counter value for controlling communication operation. For example, the network allocation vector (NAV) uses the duration information to count down the amount of time after transmission of the DMG CTS frame necessary for the medium to be idle. *See, e.g.*, Section 10.3.2.1 of IEEE 802.11 2016. The second section includes the address of the first electronic device.  For example, the RA section of the DMG CTS frame contains the address of the first wireless station. *See, e.g.*, Section 9.3.1.14 and Figure 9-43 of IEEE 802.11 2016. The third section includes the address of the second electronic device.  For example, the TA section of the DMG CTS frame includes the address of the second wireless station. *See, e.g.*, Section 9.3.1.14 and Figure 9-43 of IEEE 802.11 2016.

78.    The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

79.    At a minimum, TP-Link has known of the '754 patent at least as early as the filing date of the complaint. In addition, TP-Link has known about the '754 patent since at least November 5, 2021, when TP-Link and/or its agents received notice of its infringement via a letter. Redwood sent another letter, which referenced the prior notice letter, that was received by TP-Link and/or its agents on January 6, 2022. Furthermore, TP-Link has known about the '754 patent

since at least May 24, 2022, when TP-Link and/or its agents received notice of its infringement via another letter.

80.     On information and belief, since at least the above-mentioned date when TP-Link was on notice of its infringement, TP-Link has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, use, purchase, offer to sell, or sell the Accused Products comprising all of the limitations of one or more claims of the '754 patent to directly infringe one or more claims of the '754 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, TP-Link does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '754 patent. TP-Link intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

81.     On information and belief, despite having knowledge of the '754 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '754 patent, TP-Link has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. TP-Link's infringing activities relative to the '754 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful,

flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

82.     Redwood has been damaged as a result of TP-Link's infringing conduct described in this Count. TP-Link is, thus, liable to Redwood in an amount that adequately compensates Redwood for TP-Link's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V**

(INFRINGEMENT OF U.S. PATENT NO. 9,374,209)

83.     Plaintiff incorporates paragraphs 1 through 82 herein by reference.

84.     Redwood is the assignee of the '209 patent, entitled "Transmission Signal Generation Apparatus, Transmission Signal Generation Method, Reception Signal Apparatus, and Reception Signal Method," with ownership of all substantial rights in the '209 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

85.     The '209 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '209 patent issued from U.S. Patent Application No. 14/703,938.

86.     TP-Link has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '209 patent in this judicial district and elsewhere in Texas and the United States.

87.     TP-Link directly infringes the '209 patent via 35 U.S.C. § 271(a) by making, offering for sale, using, testing, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental

technologies covered by the '209 patent. For example, TP-Link directly infringes the '209 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '209 patent, to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, TP-Link sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '209 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, TP-Link directly infringes the '209 patent through its direct involvement in the activities of its subsidiaries, including TPLUSA, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '209 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. On information and belief, TP-Link offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, TP-Link is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., TPLUSA, (under both the alter ego and agency theories) because, as an example and on information and belief, TP-Link and TPLUSA are essentially the same company, and TP-Link has the right and ability to control its subsidiaries

infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., TPLUSA.

88.    For example, TP-Link infringes claim 11 of the '209 patent via the Accused Products. The Accused Products comprise a transmission signal generation apparatus configured to generate transmission signals (e.g., HT-mixed format transmission signals). *See, e.g.*, Figure 19-2 of IEEE 802.11 2016.

89.    The Accused Products each comprise circuitry and/or components (hardware and/or software) configured to generate one or more transmission signals, where each transmission signal includes a data frame having preamble information, pilot information, and data information. *See, e.g.*, Sections 19.3.3 and 19.3.20 and Figure 19-2 of IEEE 802.11 2016. Further, each of the transmission signals include the PHY preamble, at least four pilot symbols, and data information. *See, e.g.*, Sections 19.3.1, 19.3.11.10, and 19.3.20 of IEEE 802.11 2016.

90.    Each of the one or more transmission signals includes an associated preamble multiplied by a factor so that an average reception power of the associated preamble corresponds to an average reception power of the data information received with the associated preamble. For example, each of the transmission signals is multiplied by a normalization factor corresponding to the modulation scheme to achieve the same average power for all mappings, where the preamble and data information can have different modulation types and therefore different corresponding normalization factors. *See, e.g.*, Section 17.3.5.8, Table 17-11, Equation 17-20, and Figure 17.1 of IEEE 802.11 2016.

91.    Each of the one or more transmission signals includes plural pilot symbol sequences. For example, each of the transmission signals include at least four pilot symbols

inserted in, for example, carrier positions -21, -7, 7, and 21. *See, e.g.*, Section 19.3.11.10 and Figure 19-3 of IEEE 802.11 2016.

92.    The Accused Products each comprise circuitry and/or components (hardware and/or software) of an Inverse Fourier transformer configured to generate for each of the one or more transmission signals a corresponding OFDM signal for transmission by a corresponding one of one or more antennas by Inverse Fourier transforming each of the transmission signals. *See, e.g.*, Section 19.3.3 and Figure 19-3 of IEEE 802.11 2016.

93.    The Inverse Fourier transformer of each of the Accused Products is configured to arrange the pilot symbol sequences in corresponding pilot carriers during a first time period. For example, the Inverse Fourier transformer is configured to arrange pilot sequences in the pilot carriers of each OFDM symbol transmitted during a first time period (e.g., the 3.2 μs DFT period). *See, e.g.*, Section 19.3.6, 19.3.11.10, 19.3.21, 19.4.3, and Equation 19-90 of IEEE 802.11 2016.

94.    The transmitter of each of the Accused Products is configured to arrange sets of the pilot carriers in a same carrier position in the OFDM signal, where the plural pilot symbol sequences are all orthogonal to each other. For example, the transmitter is configured to arrange pilot sequences for each space-time stream, where each of the OFDM signals contains four pilot carriers inserted in, for example, carrier positions -21, -7, 7, and 21. *See, e.g.*, Section 19.3.11.10, Equation 19-54, and Table 19-19 of IEEE 802.11 2016. Pilot sequences corresponding to different spatial streams are orthogonal to each other. *See, e.g.*, Table 19-19 of IEEE 802.11 2016.

95.    The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

96.    At a minimum, TP-Link has known of the '209 patent at least as early as the filing date of the complaint. In addition, TP-Link has known about the '209 patent since at least

November 5, 2021, when TP-Link and/or its agents received notice of its infringement via a letter

and a list of relevant patents. Redwood sent another letter, which referenced the prior notice letter,

that was received by TP-Link and/or its agents on January 6, 2022. Furthermore, TP-Link has

known about the '209 patent since at least May 24, 2022, when TP-Link and/or its agents received

notice of its infringement via another letter.

97.    On information and belief, since at least the above-mentioned date when TP-Link

was on notice of its infringement, TP-Link has actively induced, under U.S.C. § 271(b), its

distributors, customers, subsidiaries, importers, and/or consumers that import, use, purchase, offer

to sell, or sell the Accused Products comprising all of the limitations of one or more claims of the

'209 patent to directly infringe one or more claims of the '209 patent by using, offering for sale,

selling, and/or importing the Accused Products. Since at least the notice provided on the above-

mentioned date, TP-Link does so with knowledge, or with willful blindness of the fact, that the

induced acts constitute infringement of the '209 patent. TP-Link intends to cause, and has taken

affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries,

and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of

the Accused Products, creating and/or maintaining established distribution channels for the

Accused Products into and within the United States, manufacturing the Accused Products in

conformity with U.S. laws and regulations, distributing or making available instructions or

manuals for these products to purchasers and prospective buyers, testing and certifying features

related to infringing features in the Accused Products, and/or providing technical support,

replacement parts, or services for these products to these purchasers in the United States.

98.    On information and belief, despite having knowledge of the '209 patent and

knowledge that it is directly and/or indirectly infringing one or more claims of the '209 patent, TP-

Link has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. TP-Link's infringing activities relative to the '209 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

99.    Redwood has been damaged as a result of TP-Link's infringing conduct described in this Count. TP-Link is, thus, liable to Redwood in an amount that adequately compensates Redwood for TP-Link's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

100.    Plaintiff Redwood is entitled to recover from TP-Link the damages sustained by Plaintiff as a result of TP-Link's wrongful acts, and willful infringement, in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

101.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

102.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

103.    Plaintiff respectfully requests that the Court find in its favor and against TP-Link, and that the Court grant Plaintiff the following relief:

1. A judgment that TP-Link has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2. A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by TP-Link;

3. A judgment and order requiring TP-Link to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4. A judgment and order requiring TP-Link to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5. A judgment and order finding this to be an exceptional case and requiring TP-Link to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6. Such other and further relief as the Court deems just and equitable.

Dated: September 26, 2022

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
T. William Kennedy Jr.
Texas Bar No. 24055771
Jon Rastegar
Texas Bar No. 24064043
**Nelson Bumgardner Conroy PC**
2727 N. Harwood St.
Suite 250
Dallas, TX 75201
Tel: (214) 446-4950
pat@nelbum.com
bill@nelbum.com
jon@nelbum.com

John P. Murphy
Texas Bar No. 24056024
**Nelson Bumgardner Conroy PC**
3131 W 7th St
Suite 300
Fort Worth, TX 76107
Tel: (817) 377-9111
murphy@nelbum.com

**Attorneys for Plaintiff**
**Redwood Technologies, LLC**